UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHN E. MANNERY, JR.,

                        Plaintiff,

        v.                                          Case No. 23-cv-1314-pp

ANTHONY MOYLE, *et al.*,

                        Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED
WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING WITHOUT
PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 3)
AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

        Plaintiff John E. Mannery, Jr., who is incarcerated at Kettle Moraine

Correctional Institution and is representing himself, filed a complaint under 42

U.S.C. §1983, alleging that the defendants violated his rights under federal and

state law. This order resolves the plaintiff's motions for leave to proceed

without prepaying the filing fee, dkt. no. 2, and for appointment of counsel,

dkt. no. 3, and screens his complaint, dkt. no. 1.

**I.      Motion for Leave to Proceed without Prepaying the Filing Fee
        (Dkt. No. 2)**

        The Prison Litigation Reform Act (PLRA) applies to this case because the

plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h).

The PLRA lets the court allow an incarcerated plaintiff to proceed with without

prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the

plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On October 19, 2023, the court ordered that the plaintiff would not be required to pay an initial partial filing fee. Dkt. No. 10. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the full $350 filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

   A.    <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

"accepted as true, to 'state a claim to relief that is plausible on its face.'"
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.
Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the
plaintiff pleads factual content that allows a court to draw the reasonable
inference that the defendant is liable for the misconduct alleged." Id. (citing
Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege
that someone deprived him of a right secured by the Constitution or the laws of
the United States, and that whoever deprived him of this right was acting
under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793,
798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d
824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by
plaintiffs who are representing themselves and holds such complaints to a less
stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720
(citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The complaint details events that allegedly occurred while the plaintiff
was incarcerated at Oshkosh Correctional Institution. Dkt. No. 1 at ¶1. It
names as defendants Nurse Anthony Moyle, Sergeant Domingo Camarena,
Nurse Jennifer Feltz, Lieutenant Michael Verheyen, Dr. Phillip O. Wheatley and
Health Services Unit (HSU) Manager Julie Ludwig. Id. at ¶¶2–7. The complaint
alleges that all defendants worked at Oshkosh, and it seeks to proceed against
them in their individual capacities. Id. at ¶8.

The plaintiff alleges that on December 8, 2022, he hurt his foot while playing basketball at Oshkosh. Id. at ¶9. He says the pain was so great that he could not balance his weight, put pressure on his foot or walk. Id. at ¶10. He says blood from his injury "soaked through [his] sock" and his foot swelled. Id. Oshkosh staff called the HSU to report the plaintiff's injury. Id. at ¶12. Another incarcerated person took the plaintiff to the HSU in a wheelchair, and the plaintiff saw Nurse Moyle. Id. at ¶¶13–14. Moyle cleaned the blood from the plaintiff's foot, wrapped his foot in an ace bandage and told the plaintiff not to walk on his foot. Id. at ¶¶15–17. He prescribed the plaintiff crutches, a wheelchair, acetaminophen, band-aids, ice and "tray assist." Id. at ¶18. Moyle also referred the plaintiff for an appointment with a doctor. Id. at ¶19. The plaintiff says that he told Moyle that he was housed on an upper tier, and Moyle responded that "he would put an order in WICS computer data base for plaintiff to be moved to the lower tier." Id. at ¶¶20–21.

After the plaintiff was wheeled back to his housing unit, Sergeant Camarena called for him to log in at the officer's station. Id. at ¶¶22–23. Camarena asked the plaintiff about his injury, and the plaintiff told Camarena "that he was in extreme pain and he could not walk on his foot." Id. at ¶24. He also told Camarena that Nurse Moyle put in an order for the plaintiff to be moved to a lower tier. Id. at ¶25. The plaintiff asked Camarena to call the HSU to ask Moyle about the lower-tier restriction, but Moyle allegedly told Camarena that the plaintiff "did not need to be moved to the lower tier, a bottom bunk was all he needed." Id. at ¶¶28–29. Nonetheless, the plaintiff

4

asked Camarena to move him to the lower tier, but Camarena refused. Id. at ¶¶30–31. Later the same day, the plaintiff wrote a request to the HSU to be moved to a lower-tier cell. Id. at ¶32. He alleges that it was difficult for him to use the stairs and to perform daily tasks with crutches. Id. at ¶33.

On December 10, 2022, the plaintiff was attempting to descend the stairs when he fell down nearly the entire staircase. Id. at ¶¶34–36. He says three correctional officers (who are not defendants) witnessed his fall. Id. at ¶37. The officers told the plaintiff not to move and to wait for a nurse "because it was a really bad fall." Id. at ¶39. A sergeant called in a medical emergency, and Nurse Feltz arrived with other officers (who are not defendants). Id. at ¶41. Feltz said that the plaintiff should not have been housed on the upper tier while using crutches, that the "sergeant who was working should have moved the plaintiff when he was first injured and the nurse should have prescribed a lower tier restriction." Id. at ¶42. The plaintiff says he injured his middle and lower back, leg, neck and ankle from the fall. Id. at ¶44. He says he now suffers migraines. Id. He alleges that he "was in excruciating pain all over and needed to be pick[ed] up off the floor by officer's [*sic*] when the wheel chair arrived." Id. at ¶45. Feltz pushed the plaintiff in his wheelchair to the HSU and prescribed him ibuprofen and lidocaine. Id. at ¶¶46–47. A lieutenant (not a defendant) told Feltz "to make sure the plaintiff is given a lower tier restriction this time." Id. at ¶48. The plaintiff says Oshkosh staff filed an incident report and "reserved camera footage of the fall." Id. at ¶¶49–50.

The plaintiff alleges that on December 15, 2022, Dr. Wheatley stopped the plaintiff's prescription for the medications the nurses had prescribed him. Id. at ¶51. The plaintiff filled out medication refill slips for ibuprofen and cyclobenzaprine, but he did not receive refills. Id. at ¶52. The HSU instead told the plaintiff "to stick to the healthcare plan," but the plaintiff says there was no such plan. Id. at ¶¶53–54. He says he "was denied treatment for pain and suffering for almost a week." Id. at ¶55. The plaintiff alleges that the pain kept him from sleeping or standing on his own, and he says he suffered "needle and pin pain, muscle spasms, back locks up, constant throbbing throughout the day," shooting pain, a "whiplash" sensation in his neck, severe migraines and emotional symptoms like depression and anxiety. Id. at ¶¶56–61. He alleges that he developed carpel tunnel in his wrist from using the crutches. Id. at ¶62.

The plaintiff alleges that on January 10, 2023, he saw Dr. Wheatley. Id. at ¶63. Wheatley prescribed him a foot basin and wheelchair to use on his prison unit, and he put in an order for the plaintiff to undergo a CAT scan and begin physical therapy. Id. at ¶¶64–65. The plaintiff says that as he was using the wheelchair that evening, a correctional officer (not a defendant) told him to get out of the wheelchair. Id. at ¶67. The plaintiff tried to explain his medical use of the wheelchair, but the officer "told the plaintiff he was lying and would be receiving a conduct report." Id. at ¶¶68–69. A sergeant (also not a defendant) told the officer to look up the plaintiff's medical restriction in the computer database, but no such restriction appeared. Id. at ¶¶70–71. The officer then called the HSU and spoke with Nurse Feltz, who confirmed that the

plaintiff had seen the doctor that day. Id. at ¶¶72–73. But Feltz allegedly told the officer that the plaintiff "was faking injury, he was not in pain, he could walk, he's manipulating Dr. Wheatley into giving him a wheel chair." Id. at ¶74 (internal quotation omitted).

That night, a captain (not a defendant) sent the plaintiff to the restricted housing unit for disciplinary segregation. Id. at ¶75. The plaintiff says that Lieutenant Verheyen took the plaintiff to segregation and told the plaintiff he had spoke with Nurse Feltz, who told Verheyen the same things about the plaintiff faking his injury. Id. at ¶76. The plaintiff tried to explain "the extent of all his injuries." Id. at ¶78. He says Verheyen "pulled the mattress to the front of the door inside the cell and laid it on the floor by the toilet." Id. at ¶79. Verheyen and another officer (not a defendant) lowered the plaintiff to the floor. Id. at ¶80. The plaintiff says he could not sleep or brush his teeth, and he says he had to urinate into a cup "and pour it into the toilet." Id. He says he also had to eat on the floor and laid there "in extreme pain for 9 days without a shower." Id. He pressed the emergency call button for assistance but received no response. Id. at ¶81.

The plaintiff says he eventually underwent an x-ray of his foot, which revealed no broken bones. Id. at ¶¶82–83. On April 10, 2023, he underwent a CAT scan at Mercy Hospital in Oshkosh. Id.at ¶84. The CAT scan revealed various injuries in the plaintiff's vertebrae. Id. at ¶85. Dr. Wheatley and a doctor from Mercy Hospital (not a defendant) diagnosed the plaintiff with chronic back pain and sciatica nerve damage from his fall. Id. at ¶86.

7

The plaintiff claims that Nurse Moyle and Sergeant Camarena negligently failed to provide him a lower-tier medical restriction, which resulted in him falling down the stairs and injuring his back. Id. at ¶¶87–90. He also claims that Moyle and Camarena were deliberately indifferent to the risk to his health by using the crutches on the stairs, which eventually resulted in his fall and injuries. Id. at ¶¶93–94. He claims that Nurse Feltz "intentionally overrode and failed to carry out defendant Dr. Wheatley orders," denied his use of a wheelchair and falsely told correctional officers that he was faking his injury. Id. at ¶95. He says Feltz's actions violated his rights under the Eighth Amendment. Id. The plaintiff also claims that Lieutenant Verheyen violated his rights when he placed the plaintiff on the mattress on the floor in the restricted housing cell for nine days without proper sleep, a shower or proper care for his injuries. Id. at ¶¶97–98. He claims that Wheatley delayed and denied his medical treatment when he told the plaintiff "to stick to a medical plan" that did not exist. Id. at ¶99. He says Wheatley's inadequate care extended and worsened his injuries. Id. at ¶¶100–101. Finally, the plaintiff claims that HSU Manager Ludwig "failed to remedy the wrong" of the other defendants "after being informed of various violations through report and appeal process." Id. at ¶102. He seeks to hold her responsible under "respondent [sic] superior." Id.

The plaintiff seeks to proceed on federal and state-law claims. Id. at 7. He seeks compensatory and punitive damages against all defendants. Id. at 7–8.

C.     Analysis

The plaintiff's allegations against Nurse Moyle and Sergeant Camarena amount to a claim of deliberate indifference, which arises under the Eighth Amendment's prohibition of cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. The subjective component of an Eighth Amendment violation requires the plaintiff to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." Id. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837). Neither negligence nor gross negligence is enough to support an Eighth Amendment claim. See Farmer, 511 U.S. at 835–36; Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001).

The plaintiff alleges that Moyle provided him thorough medical care after his foot injury—prescribed him crutches, a wheelchair, pain medicine and ice and referred him for an appointment with a doctor. Moyle also told the plaintiff that he would put in a request for him to have a lower-tier medical restriction, but he did not follow through on that. When Camarena called Moyle to ask about the restriction, Moyle allegedly told Camarena that the plaintiff did not need the restriction and needed only a bottom bunk. Camarena also refused

9

the plaintiff's request for a lower-tier medical restriction. The plaintiff's allegations about his foot injury—which caused him severe pain and warranted various medical care and prescriptions—satisfy the objective component of an Eighth Amendment claim. See, *e.g.*, Walker v. Benjamin, 293 F.3d 1030, 1040 (7th Cir. 2002). And his allegations that Moyle and Camarena knew about the extent of his injury but refused him a lower-tier cell, which meant he had to walk up and down the stairs using crutches, show that they were aware of the risk to his safety because of his foot injury but disregarded it by refusing him a lower-tier cell. Eventually the evidence may show that Moyle and/or Camarena were not able to provide plaintiff the lower-tier cell he requested on their own. But accepting the allegations in the complaint as true for the purposes of screening, the court finds that the plaintiff sufficiently states an Eighth Amendment claim of deliberate indifference against Moyle and Camarena.

As the court has explained, negligence does not violate the Constitution. But federal courts may exercise supplemental jurisdiction over a state law claim that is "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a). Because the plaintiff's claim of negligence against Moyle and Camarena is based on the same allegations that underlie his Eighth Amendment claim, the court will exercise supplemental jurisdiction over the plaintiff's state law negligence claim.

The court reviews the plaintiff's allegations about the medical treatment he received from Nurse Feltz and Dr. Wheatley under the Eighth Amendment.

Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (en banc).

As he alleged against Moyle, the plaintiff alleges that Feltz initially provided thorough medical treatment. She allegedly was the first medical staff member to arrive after his fall, she prescribed him ibuprofen and lidocaine for his injuries and she followed instructions to be sure he received a lower-tier restriction. Those actions cannot fairly be described as deliberate indifference to the plaintiff's back injury. But the plaintiff alleges that Feltz later falsely (and perhaps maliciously) told correctional staff that the plaintiff was faking his injury and should not be in a wheelchair. The plaintiff alleges that Feltz refused to follow Wheatley's medical orders because she believed the plaintiff was manipulating him. He says he then was sent to disciplinary segregation because of Feltz's false report of his malingering. The plaintiff's back injury and the array of symptoms he experienced from his fall satisfy the objective component of an Eighth Amendment claim. See Pyles, 771 F.3d at 405, 411. His allegations also show that Feltz was aware of the plaintiff's injuries and symptoms because she was the first medical staff to treat him. Yet she

disregarded his medical needs and falsely reported to correctional staff that the plaintiff was lying and faking his injuries. Those allegations satisfy the subjective component and, if true, show that Feltz disregarded the plaintiff's injuries and caused him further pain and suffering. The plaintiff may proceed on this claim against Feltz.

The plaintiff alleges that Wheatley delayed getting him proper medical treatment when he discontinued the plaintiff's pain medication and told him to stick to a medical plan that did not exist. "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." Arnett v. Webster, 658 F.3d 742, 753 (7th Cir. 2011) (citing McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)). How long a delay is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" Id. (quoting McGowan, 612 F.3d at 640). The plaintiff's allegations that Wheatley refused to refill the plaintiff's pain medications suggest that Wheatley knew about the plaintiff's medical need and disregarded it by failing to provide medication. Those allegations also suggest that Wheatley easily could have provided treatment by simply refilling the prescriptions. He did not, and the plaintiff suffered additional days of severe pain. These allegations are sufficient to proceed at the pleading stage.

The plaintiff's allegations against Lieutenant Verheyen challenge the conditions of his confinement in disciplinary segregation. Under the Eighth Amendment, a state may not subject incarcerated persons "to conditions of

confinement amounting to cruel and unusual punishment." <u>Giles v. Godinez</u>, 914 F.3d 1040, 1051 (7th Cir. 2019) (citing <u>Rhodes v. Chapman</u>, 452 U.S. 337, 345–47 (1981)). The Supreme Court has clarified, however, that only "extreme deprivations" will amount to cruel and unusual conditions of confinement. <u>Id.</u> (citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992)). The court must judge the alleged conditions "in accordance with contemporary standards of decency." <u>Id.</u> (citing <u>Hudson</u>, 503 U.S. at 8, and <u>Rhodes</u>, 452 U.S. at 346). In the context of his conditions-of-confinement claim, the plaintiff must show that he has been deprived of "'the minimal civilized measure of life's necessities.'" <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991) (quoting <u>Rhodes</u>, 452 U.S. at 347). As with his other claims, the subjective component requires the plaintiff to demonstrate that prison officials acted with "deliberate indifference" to a substantial risk that he would suffer serious harm. <u>Farmer</u>, 511 U.S. at 834; <u>Wilson</u>, 501 U.S. at 303.

This claim is more straightforward than the plaintiff's other claims. The plaintiff alleges that Verheyen left him in his segregation cell on a mattress on the floor. He says Verheyen knew about the plaintiff's injuries because Feltz told him that the plaintiff was faking them. The plaintiff says he remained on the floor of the segregation cell for nine days, during which he could not sleep or brush his teeth, had to urinate into a cup and pour it into the toilet, remained in extreme pain and did not receive a shower. These allegations, if true, demonstrate that Verheyen knowingly left the plaintiff in conditions that did not provide him "the minimal civilized measure of life's necessities." The

court will allow the plaintiff to proceed on an Eighth Amendment claim against Verheyen.

The court will not allow the plaintiff to proceed on a claim against HSU Manager Ludwig. The complaint contains no allegations against Ludwig. The only mention of her comes in the final paragraph describing the plaintiff's legal claims. This vague paragraph says that Ludwig was "informed of various violations through report and appeal process" but that she "failed to remedy the wrong." Dkt. No. 1 at ¶102. The plaintiff does not say whether *he* filed a report to Ludwig and does not specify which "violations" were reported to her. But he does say that Ludwig should be held responsible under "respondent [*sic*] superior." Id.

Even if the plaintiff is the one who reported the violations to Ludwig, and even if he told her everything that he alleges in his complaint, he would not state a claim against Ludwig. That is because under §1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Iqbal, 556 U.S. at 676. The plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. As the Seventh Circuit more succinctly explained, "[s]upervisors are responsible for what they do themselves, not for what their subordinates do." Day v. Subsecretario del Sistema Penitenciario Federal, 838 F. App'x 192, 193 (7th Cir. 2021).

The complaint does not allege that Ludwig personally acted or failed to act in a way that directly caused or contributed to the plaintiff's injuries. It seeks to hold her responsible merely because she is the HSU manager. Ludwig's supervisory position alone is not a basis for her liability under §1983. Nor may the plaintiff hold her responsible for not responding to the reports and appeals that he (or someone else) sent to her. See Courtney v. Devore, 595 F. App'x 618, 620 (7th Cir. 2014) (citing Burks v. Raemisch, 555 F.3d 592, 595–96 (7th Cir. 2009)). The court will dismiss Ludwig as a defendant because the complaint fails to state a claim against her.

## III.  Motion to Appoint Counsel (Dkt. No. 3)

The plaintiff asks the court to appoint counsel to assist him. Dkt. No. 3. The plaintiff says that he is unable to afford counsel, the issues in his case are complex, he has limited knowledge of the law and three attorneys to whom he wrote declined to "handle his case." Id. He also filed a brief in support of his motion for counsel, in which he adds that his case is factually complex, he has a limited "ability to investigate" the issues and his case "is a meritorious one." Dkt. No. 4.

In a civil case, the court has the discretion to recruit counsel for individuals unable to afford counsel. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866–67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to

volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654–55 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This

includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490–91. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff has not satisfied either of these inquiries. He says that he wrote to three attorneys about his case, but he names only one of them (Brian Hodgkins). Dkt. No. 3. He does not say who the other attorneys are or whether he received any response from them. Nor did the plaintiff attach a copy of the letters he sent to the attorneys or any response letters that he received. The plaintiff may have made *some* effort to obtain counsel on his own, but the court cannot infer from his motion whether he made a sufficient attempt to obtain counsel. For this reason alone, the court could deny the plaintiff's motion to appoint him counsel.

The court also concludes that the plaintiff has not shown that he is one of the *pro se* litigants most in need of an attorney's assistance to litigate his case. The court agrees with the plaintiff that his case is somewhat complex; he has sued several defendants on different theories of liability under the Eighth Amendment. But the plaintiff's complaint and other filings to date show that he

has a strong grasp of both the facts relevant to his claims and the legal basis for those claims. The plaintiff's complaint is thorough, easy to follow and well organized. He explains in detail the facts related to his injuries and the defendants' actions that he believes violated his rights (which he correctly describes as Eighth Amendment violations). The court understands that the plaintiff may have limited time to work on his case and limited resources with which to work. But unfortunately, that is a universal problem for incarcerated litigants and is not a reason to recruit counsel to represent the plaintiff. As the court explained above, there simply are not enough attorneys able and willing to work on a volunteer basis on these cases, no matter the potential merit of the case. The plaintiff may request additional time to meet court deadlines, and the court will be flexible in providing him the time that he needs.

The court concludes that the plaintiff's pleadings to date show that he has a firm grasp of the events alleged and an understanding of his constitutional claims. As the case progresses, the legal and factual issues may become too complex for him, his circumstances may change, or he may find himself unable to obtain the information he believes he needs to prove his claims. If that occurs, and if additional time does not cure the problem, the court may revisit this decision and decide that it is appropriate to recruit counsel to represent the plaintiff. But at this early stage of the proceedings, the court finds that the plaintiff does not require the assistance of counsel to present his case.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 3.

The court **ORDERS** that defendant Julie Ludwig is **DISMISSED**.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Anthony Moyle, Domingo Camarena, Jennifer Feltz, Michael Verheyen and Dr. Phillip O. Wheatley. Under the informal service agreement, the court **ORDERS** the defendants to respond to the complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$350** filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Kettle Moraine Correctional Institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 12th day of March, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**